HAROLD K. FITZGERALD *vs*. BOSTON AND MAINE RAILROAD.

Hampshire.    September 19, 1951. — January 11, 1952.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Negligence*, Grade crossing; Railroad: grade crossing, operation of locomotive; Contributory; Violation of law.

Evidence warranted a finding that a collision between a railroad locomotive and a stalled motor truck on a grade crossing was due to negligence of the engineer of the locomotive in failing,while running on a straight section of track, to observe sooner than he did one standing beside the track endeavoring to warn him of the presence of the truck on the crossing.

Contributory negligence on the part of the operator of a motor truck struck by a railroad locomotive on a grade crossing was a question for the jury on evidence that after the truck had stalled on the crossing without his fault he tried for several minutes to move it off the crossing and then, upon hearing the whistle of the approaching locomotive, ran along the track toward it several hundred feet making signals in an endeavor to stop it.

Evidence that an operator of a motor truck approached a railroad grade crossing very slowly and took precautions to avoid stalling the truck on the crossing, but that nevertheless it did stall thereon and could not be moved in time to avoid being struck by a locomotive, did not require a ruling that he had violated G. L. (Ter. Ed.) c. 90, § 15, as amended.

TORT. Writ in the Superior Court dated April 14, 1947.
The action was tried before *Leary,* J.

*J. J. O'Connell,* for the plaintiff.

*P. Brownell,* for the defendant.

COUNIHAN, J. This is an action of tort to recover for property damage arising out of a collision between an automobile truck owned by the plaintiff and operated by one Hamel, his employee, and a locomotive of the defendant on a railroad crossing on Water Street, Northampton. After denial of a motion for a directed verdict for the defendant, the action was submitted to a jury who returned a verdict for the plaintiff, which the judge received under leave reserved. G. L. (Ter. Ed.) c. 231, § 120. Thereafter upon motion the judge entered a verdict for the defendant. The plaintiff excepted.

There are three questions before us. Was there sufficient evidence of negligence of the engineer of the defendant to support the verdict for the plaintiff? Was the employee of the plaintiff guilty of contributory negligence? Did the employee of the plaintiff violate G. L. (Ter. Ed.) c. 90, § 15, as amended, which so far as pertinent reads as follows: "Except as hereinafter otherwise provided, every person operating a motor vehicle, upon approaching a railroad crossing at grade, shall reduce the speed of the vehicle to a reasonable and proper rate, and shall proceed cautiously over the crossing"?

The evidence most favorable to the plaintiff was in substance as follows. On February 22, 1947, at about 5:30 P.M. Hamel was operating the truck on Water Street, a public highway, at a place where the railroad tracks cross the street at grade. Earlier that day it had been snowing and blowing hard. As Hamel approached the crossing very slowly it was getting dark. The motor of the truck had been "skipping" and Hamel shifted into second gear to prevent the motor from stalling. Despite this the motor stalled and the truck came to a stop on the railroad tracks. Hamel tried to move it by using the starter with the motor in gear. Failing in this he got out of the truck and tried to push it.

While doing so he heard the sound of a whistle on the locomotive of a train approaching in a southerly direction. He then ran northerly along the tracks waving a white handkerchief and a red hat in an endeavor to stop the oncoming train. These tracks ran northerly from the crossing in a straight line for about 2,000 feet to a point where they bent to the east sharply. There was nothing to obstruct the view of the engineer from the place of the bend to the crossing. When Hamel reached a point about 400 feet from the crossing, he stopped beside the tracks but continued to wave his handkerchief and hat. At this point the train passed him going about 45 miles an hour. Hamel heard the screeching of the brakes of the locomotive as they were applied when it was about 100 to 150 feet from the crossing. The locomotive struck the truck, completely destroying it as well as the milk bottles on it.

There was also evidence from the engineer that "*as he looked up*" (emphasis supplied) he saw a man standing beside the track making violent motions which indicated to him that something was radically wrong. He could not say how far this man was from the locomotive when he first saw him, but, just after he saw him, he observed the truck on the track. He put on full emergency brakes as soon as he saw him, and the locomotive travelled less than 400 feet from the place where he saw him to where the engine stopped.

Without objection the employee of the plaintiff testified that the engineer told him that he had been stuck in the snow, that he was late, and that he was trying to make up time.

There was further evidence by way of answers of the defendant to interrogatories that the locomotive was 300 feet from the truck when the engineer first saw it.

We are of opinion that upon this evidence the jury were warranted in finding that the engineer of the defendant was negligent and that such negligence caused the accident. It was early established in this Commonwealth that a railroad must use due care in the operation of its engines and

trains so as not to injure persons or property which are rightfully on a public highway where the railroad crosses the highway at grade. "The rule therefore is, that in the use of a common privilege, where there is a possibility of interference, each is bound to bring to the use of such privilege such reasonable degree of foresight, skill, capacity, and actual care and diligence, as may be necessary to enable him to use the privilege with due regard to the safety of all others using like precautions, skill and care, and such as a person of ordinary sense, prudence and discretion would use in regard to his own affairs under like circumstances." *Shaw* v. *Boston & Worcester Railroad,* 8 Gray, 45, 66, 67.

It is plain that the jury could warrantably find that the conduct of the engineer did not meet this test; that because the engineer saw the truck when it was 300 feet away there must have been good visibility for this distance at least; that he first saw Hamel when he was about 400 feet from the crossing; that this was "as he looked up"; and that if he had been alert and using the care required of him, he would have been looking up as he approached this crossing for a distance of considerably more than 400 feet from the crossing and he would have observed Hamel in sufficient time to bring his train to a stop and thus avoid the accident.

The defendant contends that the employee of the plaintiff was guilty of contributory negligence in the operation of the truck in that he did not walk up the tracks to warn the engineer until after he had spent five minutes endeavoring to start the truck or move it off the tracks. We are of opinion that such conduct of the operator of the truck did not as matter of law constitute contributory negligence.

The jury would be warranted in finding that the operator of the truck approached the crossing very slowly at a time when the locomotive was more than 2,000 feet away and when it was neither seen nor heard by him; that the operator took reasonable precaution to prevent the motor from stalling, and the fact that it did stall was due to no negligence of his; that when the truck stalled no train was in sight; and that when the truck stopped on the tracks he

did what he could reasonably do to move the truck off the tracks and, failing in that, endeavored to flag the train. All of these conclusions would warrant the jury finding no contributory negligence. *Hunt* v. *Boston & Maine Railroad*, 250 Mass. 434, 439.

The further contention of the defendant that the plaintiff is barred from recovery because of violation of G. L. (Ter. Ed.) c. 90, § 15, is without merit. The burden of proving a violation of c. 90, § 15, was on the defendant. *Copithorn* v. *Boston & Maine Railroad*, 309 Mass. 363, 371. What we have said with reference to the question of contributory negligence applies with equal force to this question. It was for the jury to decide. "There is nothing in the evidence which would justify a ruling that the plaintiff proceeded without caution over or upon the crossing because of the stalling of the automobile driven by him." *Eisenhauer* v. *Boston & Maine Railroad*, 285 Mass. 439, 445.

It follows therefore that the exceptions are sustained, the verdict for the defendant entered under leave reserved must be set aside, and the original verdict for the plaintiff is to stand.

*So ordered.*