WINFORD E. FAY *vs.* BOSTON AND MAINE RAILROAD.

Hampshire.    September 25, 1958. — February 9, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Railroad,* Grade crossing. *Negligence,* Grade crossing, Violation of law, Motor vehicle. *Evidence,* Presumptions and burden of proof.

An action against a railroad at common law for negligence in operating a freight train with a diesel locomotive so that it collided with an automobile operated by the plaintiff in the daytime on a public grade crossing over a single track, and under G. L. c. 160, § 232, for failure to give the bell or whistle signals required by § 138, which were not given, was barred as matter of law where evidence of the circumstances of the accident uncontroverted by the plaintiff disclosed a violation by him of c. 90, § 15, as amended by St. 1933, c. 26, § 1, in that after bringing his automobile to a full stop four or five feet from the nearer rail of the track at a point where he could see up the track three hundred eighty feet to his left and remaining there "long enough to look up and down the track" without seeing or hearing anything, although the windows of the automobile were open and his hearing was good, he proceeded at approximately two miles per hour onto and partly over the crossing and then for the first time saw "a few feet away" to his left the locomotive, which had approached at thirty-five to forty miles an hour and which struck the side of his automobile. [534–535] COUNIHAN, J., dissenting.

In a tort action involving an accident in which the plaintiff or his property was injured, if his conduct and the circumstances of the accident are disclosed by proof which the plaintiff does not controvert, no question of the burden of proof is open on the issue whether a violation of law by him bars recovery. [535]

TORT. Writ in the Superior Court dated October 24, 1950.

The action was heard by *O'Brien*, J.

*Lawrence R. Cohen*, for the defendant.

*Gerald J. Callahan*, (*Charles R. Clason* & *Arthur D. Giustina* with him,) for the plaintiff.

WILLIAMS, J. This is an action of tort to recover for personal injury and property damage resulting from a collision of the plaintiff's automobile with the defendant's locomotive at a public crossing in the town of Belchertown. Counts 1 and 3 of the declaration are at common law for negligence, and counts 2 and 4 are under G. L. c. 160, § 232, for failure to give the statutory signals required by § 138. The defendant answered by general denial and pleaded gross negligence and acts in violation of law on the part of the plaintiff. There was a finding for the plaintiff by a judge sitting without jury. The case is here on the defendant's exceptions to the denial of its requests for rulings.

The only evidence of the collision by an eyewitness was given by the plaintiff who testified as follows. On February 8, 1950, at about 4:30 P.M. he was driving his four door sedan automobile southerly on Federal Street. He approached a crossing over the defendant's single track, a crossing with which he was thoroughly familiar, at a speed of about fifteen miles per hour. The road was somewhat downgrade and a bank obscured vision to his left. He decreased his speed gradually and stopped with the front of his automobile four or five feet from the nearest rail. He looked to the left and right and listened. He saw and heard nothing to indicate an approaching train from either the east or the west. From the point where he stopped he could see three hundred eighty feet to his left and about one thousand feet to his right. His view to the left was clear up to three

hundred eighty feet but beyond that point the track curved to the south around a barn. He put his automobile in first gear and started across the track. Suddenly "I looked up and there's a bunch of yellow streaks coming at me." It was a diesel engine. "Looking at the engine . . . [its] right hand side . . . struck the left of my car just behind the front fender on the left side." The front of the automobile was then "probably" six or seven feet over the farther rail of the track. The automobile had travelled at an approximate speed of two miles per hour sixteen or seventeen feet from where it had stopped to the point where it was struck. When he was thirty feet from the track he could see, because of the bank, only about twenty feet to his left and could not see "any distance . . . until he was beyond the bank, or about twenty feet from the rail. After that point he was looking continuously to his left. His car would have to be five to six feet from the track before he could see up to the track at his left, that is before he could get a view 'beyond that barn up there' [apparently referring to a photograph]. He could probably see half that view when twelve to fifteen feet from the track. He was stopped at the track long enough to look up and down the track. He always stopped at that crossing even though he didn't see or hear any train. Probably eight or ten seconds passed from the time he came to a stop until the time of the collision. Probably two to four seconds elapsed from the time he started across until he was hit. All the time, five or six seconds, that he was standing there he had a view of three hundred eighty to three hundred ninety feet up to his left. . . . The yellow streaks on his left, a few feet away, were the first indication he had that there would be an accident. He heard nothing and saw nothing before that point. . . . Something made him look and that's when he knew the train was there. He didn't know if it was anything he heard or whether it was just instinct." His hearing was good and the windows of his sedan were open.

There was evidence that the train was a local freight made up of a diesel engine and eleven cars. It was not a regularly scheduled train and its speed was estimated to be from

thirty-five to forty miles per hour. It could have been found that the bell and whistle signals required by G. L. c. 160, § 138, were not given. After the collision the plaintiff's automobile was about one hundred feet west of the crossing and the train was about seventy-five feet beyond the automobile.

It may be conceded that the failure to give the statutory signals was evidence of the defendant's negligence. The question for decision therefore is whether the plaintiff is barred from recovery either at common law or under G. L. c. 160, § 232, by his own admitted conduct. General Laws c. 90, § 15, prior to its amendment by St. 1951, c. 557, required an operator of a motor vehicle upon approaching a railroad crossing at grade to reduce the speed of the vehicle to a reasonable and proper rate and to proceed cautiously over the crossing. Although the plaintiff reduced his speed to the extent that he came to a full stop, he did not thereafter proceed with the caution which the statute makes mandatory. The statute is not complied with by a mere reduction of speed and there must be caution commensurate with the perils incident to a crossing. *Papageorge* v. *Boston & Maine R.R.* 317 Mass. 235, 237. The operator is required to exercise active diligence. *Fortune* v. *New York, N. H. & H. R.R.* 271 Mass. 101, 105. *Anderson* v. *Boston & Maine R.R.* 302 Mass. 101, 103. Whether the plaintiff did not look at all, or whether he looked carelessly and failed to see the train, or whether he saw the train and nevertheless decided to proceed over the crossing, he was in any event disregarding the rule of caution imposed by the statute. The case is within the authority of a long line of decisions. *Klegerman* v. *New York, N. H. & H. R.R.* 290 Mass. 268, 275. *Germaine* v. *Boston & Albany R.R.* 298 Mass. 501. *Kenney* v. *Boston & Maine R.R.* 301 Mass. 271. *Brown* v. *Boston & Maine R.R.* 302 Mass. 90. *Anderson* v. *Boston & Maine R.R.* 302 Mass. 101. *Emery* v. *New York, N. H. & H. R.R.* 302 Mass. 578. *Gove* v. *Boston & Maine R.R.* 307 Mass. 84. *Dole* v. *Boston & Maine R.R.* 308 Mass. 46. *Rice* v. *Boston & Maine R.R.* 316 Mass. 603, 605. His violation of the

statute precludes recovery by the plaintiff at common law. His conduct and the circumstances are disclosed by proof which he does not controvert and no question of the burden of proof is open. *Brown* v. *Boston & Maine R.R.* 302 Mass. 90, 92. *Rice* v. *Boston & Maine R.R.* 316 Mass. 603, 605. See *Emery* v. *New York, N. H. & H. R.R.* 302 Mass. 578, 582.

He must also be denied recovery under § 232. There is no liability under that statute to respond in damages to a person injured by a collision at a crossing who was himself acting in violation of the law. General Laws c. 90, § 15, is a penal statute and its violation by the plaintiff was a violation of law. *Kenney* v. *Boston & Maine R.R.* 301 Mass. 271, 275–277. *Duval* v. *Duval,* 307 Mass. 524, 529–530. *Rice* v. *Boston & Maine R.R.* 316 Mass. 603, 605.

At the conclusion of the evidence the defendant presented eleven requests for rulings of law which were denied subject to the defendant's exceptions. Request No. 1 read: "The plaintiff is not entitled to recover damages against the defendant, upon the pleadings, the law and the evidence," and No. 6: "The evidence requires a finding that the plaintiff was acting in violation of the provisions of G. L. (Ter. Ed.) c. 90, § 15, and such unlawful act contributed to the collision." These rulings should have been given and their denial was reversible error. They were crucial to the correct decision of the case. It is unnecessary to discuss the other requests.

> *Exceptions sustained.*
> *Judgment for the defendant.*

COUNIHAN, J. I regret that I am unable to agree with the opinion of the majority of the court in this case. I am in accord with the preliminary statement regarding the nature of this action and the manner in which it comes before us. I am also in substantial accord with the recital of facts in the opinion.

It was conceded by the defendant in its brief that there was evidence to support a finding that the signals required

Fay *v*. Boston & Maine Railroad.

by c. 160, § 138, as amended,[1] were not given. General
Laws c. 160, § 232, as amended by St. 1949, c. 427, § 10,[2]
and G. L. c. 90, § 15, as amended by St. 1933, c. 26, § 1,[3]
(now St. 1951, c. 557), are also involved. The defendant
relies in effect on a violation of c. 90, § 15, a penal statute,
and the opinion upholds the contention of the defendant.
I do not agree because I believe that the opinion would
effectively bar recovery in almost every case of a collision
between a railroad train and a motor vehicle on a public or
private grade crossing in which the operator of the vehicle
sustained injury.

It appears necessary for me to recite some of the facts set
out in the opinion. On February 8, 1950, at about 4:30 P.M.
the plaintiff was driving a 1940 Hudson sedan southerly on
Federal Street, a public highway in the town of Belchertown,
toward a public grade crossing. He reduced the speed of the
automobile as he approached the crossing and came to a full
stop four or five feet from the nearer rail of this single track.
At that point he could see the track to his left for a distance
of three hundred eighty or three hundred ninety feet. This

---

[1] "Every railroad corporation shall cause a bell of at least thirty-five
pounds in weight, and a whistle, to be placed on each locomotive engine
passing upon its railroad; and such bell shall be rung or at least three separate
and distinct blasts of such whistle sounded at the distance of at least eighty
rods from the place where the railroad crosses upon the same level any public
way or traveled place over which a signboard is required to be maintained
as provided in sections one hundred and forty and one hundred and forty-one;
and such bell shall be rung or such whistle sounded continuously or alternately
until the engine has crossed such way or traveled place."

[2] "If a person is injured in his person or property by collision with the
engines or cars or rail-borne motor cars of a railroad corporation at a crossing
such as is described in section one hundred and thirty-eight, and it appears
that the corporation neglected to give the signals required by said section or
to give signals by such means or in such manner as may be prescribed by orders
of the department, and that such neglect contributed to the injury, the cor-
poration shall be liable for all damages caused by the collision . . . or, if the
life of a person so injured is lost, to damages recoverable in tort . . . *unless
it is shown that, in addition to a mere want of ordinary care, the person injured
or the person who had charge of his person or property was, at the time of the
collision, guilty of gross or wilful negligence, or was acting in violation of the law,*
and that such gross or wilful negligence or unlawful act contributed to the
injury" (emphasis supplied).

[3] "Except as hereinafter otherwise provided, every person operating a
motor vehicle, upon approaching a railroad crossing at grade, shall reduce
the speed of the vehicle to a reasonable and proper rate, and shall proceed
cautiously over the crossing. . . . Whoever violates any provision of this sec-
tion shall be punished by a fine of not less than ten nor more than fifty dollars."

track approached the crossing on a downgrade. He looked to his left and to his right and listened. He saw and heard nothing to indicate the approach of a train from either direction. A window on his left was open and his hearing was good. His view to his left was clear up to three hundred eighty or three hundred ninety feet to a building around which the track curved to the south. A photograph of the locus which was in evidence as an exhibit showed no part of the track after it curved around that building because of a growth of underbrush. After he looked he put his automobile in first gear and started to cross the track. Suddenly "I looked up and there's a bunch of yellow streaks coming at me." It was a diesel engine. "Looking at the engine . . . [its] right hand side . . . struck the left of my car just behind the front fender on the left side." I take judicial notice that a diesel engine makes much less noise when in operation than a steam locomotive. The front of the automobile was then "probably" six or seven feet over the farther rail of the track. The automobile from a standing start had travelled at an approximate speed of two miles an hour sixteen or seventeen feet from the point where it had been stopped to the point where it was struck. The plaintiff's automobile was stopped four or five feet from the nearer rail of the track long enough to permit him to look both ways on the track.

I am of opinion that the judge was warranted in finding that the plaintiff, by his conduct, was acting "cautiously" as he drove over the crossing. "It could not have been ruled as matter of law that the plaintiff was careless because he did not look a second time in travelling a distance of fifteen or twenty feet . . . to the place where he was injured." *French* v. *Boston & Maine R.R.* 230 Mass. 163, 166. It is also difficult to say how far the 1940 Hudson would travel until it attained a speed of more than two miles an hour, particularly from a standing start and over what appears to be a rough railroad crossing.

I do not agree with the statement in the opinion that "Whether the plaintiff did not look at all, or whether he

looked carelessly and failed to see the train, or whether he saw the train and nevertheless decided to proceed over the crossing, he was in any event disregarding the rule of caution imposed by the statute." Such a statement may not be inferred from the uncontroverted testimony of the plaintiff who was the only one who testified concerning the manner in which the accident happened. I think it of significance that none of the crew of the train was called to testify.

The judge who heard this action without jury may well have concluded that the train was travelling faster than thirty-five to forty miles an hour as testified to by two witnesses called by the plaintiff, who obviously had no experience in estimating the speed of a train.

It is true that there is a long line of cases, many of which are collected in the opinion, where it has been held that a violation of c. 90, § 15, bars recovery by a plaintiff injured by reason of a collision with a railroad train at a public grade crossing. But many, if not all, of these cases are distinguishable on the facts. I agree that a heavy responsibility is placed upon one who drives a motor vehicle over a public grade crossing by reason of c. 90, § 15. I believe that in certain circumstances, particularly like those in the instant case, a plaintiff should be permitted to recover. In these modern days when the operation of an automobile has become a necessity for many people, the rights of an automobile operator and the operators of railroad locomotives should be at least equal particularly where no statutory signals were given as is hereinafter discussed. G. L. c. 160, § 232.

At any rate I prefer to follow cases like *Eisenhauer* v. *Boston & Maine R.R.* 285 Mass. 439, *Lincoln* v. *New York, N. H. & H. R.R.* 291 Mass. 116, *Rivet* v. *Boston & Maine R.R.* 320 Mass. 41, *Fitzgerald* v. *Boston & Maine R.R.* 328 Mass. 297, *Holmes* v. *New York Cent. R.R.* 330 Mass. 155, *O'Brien* v. *Boston & Maine R.R.* 330 Mass. 347, *Barton* v. *New York, N. H. & H. R.R.* 332 Mass. 345, and *Bates* v. *New York, N. H. & H. R.R.* 333 Mass. 369, in all of which recovery was permitted.

I place great emphasis in the instant case upon the fact that the judge was the trier of the facts and that it was for him to say whether the plaintiff was guilty of contributory negligence. "There was evidence that he stopped, looked and listened, and then proceeded slowly over the crossing, with nothing to indicate the approach of a train." *O'Brien* v. *Boston & Maine R.R.* 330 Mass. 347, 350. In that case it was also said at page 350: "In our opinion, too, it could not, with the burden of proof on the defendant (*Copithorn* v. *Boston & Maine Railroad,* 309 Mass. 363, 371; *Fitzgerald* v. *Boston & Maine Railroad,* 328 Mass. 297, 301), be ruled as matter of law that O'Brien violated G. L. (Ter. Ed.) c. 90, § 15."

In *Holmes* v. *New York Cent. R.R.* 330 Mass. 155, a plaintiff was permitted to recover for injuries sustained at a public grade crossing by reason of a collision with a train. At page 160 it was said of *Pierce* v. *New York, N. H. & H. R.R.* 329 Mass. 225, in which recovery was denied as matter of law in somewhat similar circumstances because of a violation of c. 90, § 15, "That case goes to the verge and we are not disposed to extend it." I agree with that statement. I believe that the opinion in the instant case is an unwarranted extension of the *Pierce* case.

In *Bates* v. *New York, N. H. & H. R.R.* 333 Mass. 369, in which this court recently permitted recovery, the plaintiff in my opinion was much more culpable than was the plaintiff in the instant case. In the *Bates* case the plaintiff drove across the railroad crossing in a blinding snow storm which prevented him from seeing or hearing the train. No similar condition existed in the case at bar. The plaintiff could rely to some extent upon the want of the statutory signals and the evidence does not require a finding that he relied entirely on this circumstance. *Bates* v. *New York, N. H. & H. R.R. supra.*

Moreover, I am of opinion that there is merit in the contention of the plaintiff that c. 160, § 232, should be decisive of this case. No mention of this contention is made in the opinion. The defendant relies upon *Kenney* v. *Bos-*

*ton & Maine R.R.* 301 Mass. 271, 276–277, where the plaintiff did not reduce his speed when approaching the crossing and neglected to look in both directions to make certain that no train was drawing near. He also stopped his automobile on the crossing. The facts in the *Kenney* case are entirely unlike those in the case at bar.

It is true that § 232 is somewhat confusing and presents a contradiction in terms. It is a recognized canon of interpretation of a statute that it should be construed to give such meaning to a statute such as is before us as will best effectuate the intention of the makers. "Barrenness of accomplishment is not lightly to be imputed to the legislative branch of the government." *Selectmen of Topsfield* v. *State Racing Commn.* 324 Mass. 309, 314.

Chapter 160, § 232, reads in part, "If a person is injured in his person . . . by collision with the engines . . . of a railroad corporation at a [public grade] crossing . . . and it appears that the corporation neglected to give the signals required by said section [138] . . . and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision . . . or, if the life of a person so injured is lost, to damages recoverable in tort . . . unless it is shown that, *in addition to a mere want of ordinary care,* the person injured . . . was, *at the time of the collision, guilty of gross or wilful negligence, or was acting in violation of the law,* and that such gross or wilful negligence or unlawful act contributed to the injury" (emphasis supplied). I think it highly important to note that a plaintiff is permitted to recover unless it is shown that in addition to mere want of ordinary care the injured person was guilty of gross or wilful negligence or was acting in violation of law. I confess I do not know exactly what "wilful negligence" means, but I surmise it amounts to nothing more than gross negligence in the circumstances of this case. Assuming for the purposes of § 232 that there was a violation of c. 90, § 15, I believe that the gravamen of the words "in violation of the law" imports a violation of law so serious as to constitute gross negligence. Although c. 90, § 15,

is a penal statute, a violation of it amounts to nothing more than mere want of ordinary care. I believe it was on this theory that the action was tried.

To say in one sentence that a person to recover must in addition to mere want of care be guilty of gross or wilful negligence and subsequently say that recovery is denied because of a violation of law which only amounts to mere want of care is a contradiction in terms which the Legislature could not have intended. The use of the word "cautiously" in c. 90, § 15, obviously, it seems to me, calls for nothing more than the exercise of reasonable care.

I construe c. 160, § 232, to mean that the person injured on a public grade crossing is entitled to recover damages in the absence of statutory signals unless he is guilty of gross negligence or his action in violation of law is so serious as to amount to gross negligence. There is no evidence of gross negligence of the plaintiff here. Gross negligence must be based on conduct amounting to an "aggravated degree of culpability." *Bagley* v. *Burkholder*, 337 Mass. 246, 248.

I would support the finding of the judge, who, sitting without jury, saw and heard all of the witnesses and as the trier of the facts arrived at the conclusion his finding indicated. Otherwise c. 160, § 232, is meaningless.